# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **BRITTANY CRANE RHINEHART,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 4:17-CV-624-VEH** |
| | ) |
| **DIVERSIFIED CENTRAL, INC.,** | ) |
| **DIVERSIFIED CONSULTANTS,** | ) |
| **INC., and JEFFERSON CAPITAL** | ) |
| **SYSTEMS, INC.,** | ) |
| | ) |
| **Defendants.** | ) |

---

## MEMORANDUM OPINION

This civil action arises out debt collection activities by Diversified Central, Inc.

("Diversified Central"), Diversified Consultants, Inc. ("Diversified Consultants")[1], and

Jefferson Capital Systems, LLC ("Jefferson Capital"). The Plaintiff, Brittany Crane

Rhinehart, alleges that through their actions, Jefferson Capital and Diversified

Consultants violated the Racketeer Influenced and Corrupt Organizations Act, 18

U.S.C. §§ 1961-1986 ("RICO") (Counts One and Two). Rhinehart also alleges that

Diversified Consultants violated the federal Telephone Consumer Protections Act, 47

U.S.C. § 227 ("TCPA") (Count Three) and the federal Fair Debt Collections Practices

---

[1] The Defendants state that "Diversified Central, Inc." is simply a registered name for
Diversified Consultants, Inc., and that the two are not separate entities. In this opinion, the Court
treats them as separate entities.

Act, 15 U.S.C. § 1692-1692p ("FDCPA") (Count Five). Finally, the Plaintiff alleges that all Defendants are liable for the Alabama state law claims of civil conspiracy (Count Four) and wantonness (Count Six).

The case comes before the Court on the Defendants' Motion To Dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted (the "Motion"). (Doc. 14). For the reasons stated herein, the Motion will be **GRANTED**.

## I. STANDARD

Generally, the Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). However, to survive a motion to dismiss brought under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*").

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556) ("*Iqbal*"). That is, the complaint must include enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation and footnote omitted). Pleadings that contain nothing more than "a formulaic recitation of the

elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557 (citation omitted).

Once a claim has been stated adequately, however, "it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563 (citation omitted). Further, when ruling on a motion to dismiss, a court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citing *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006)).

## II. ALLEGATIONS IN THE COMPLAINT

The First Amended Complaint alleges that Rhinehart "has received, and continues to receive letters and telephone calls from Diversified Consultants, Diversified Capital and/or Jefferson Capital regarding alleged monies owed to Jefferson Capital." (Doc. 9 at 3, ¶5). She contends that in these letters "Jefferson Capital purposely and willfully misrepresented to Plaintiff Rhinehart that Defendant Jefferson Capital was a creditor to Plaintiff Rhinehart" when it was not. (Doc. 9 at 7, ¶32). She also contends that "Defendant Diversified Consultants [falsely] alleged in these letters that Jefferson Capital was an original creditor of Plaintiff Rhinehart." (Doc. 9 at 8, ¶40; *see also* doc. 9 at 8, ¶41). Rhinehart contends that both Jefferson Capital and

Diversified Consultants knew the aforementioned statements in their letters were false, and purposefully made them in order to convince the Plaintiff to pay them money, which she did. (Doc. 9 at 7, ¶¶32, 33, 35; doc. 9 at 7 ¶¶44, 45, 46, 47, 48).

In addition, the Plaintiff alleges that, between December 27, 2016, and March 2, 2017, Diversified Consultants used an "automatic telephone-dialing machine" to call the Plaintiff's "personal telephone" 34 times in an effort to collect money from her. (Doc. 9 at 10-17, ¶¶56-95). Considering the Amended Complaint as whole, it is clear that by "personal telephone," the Plaintiff means "personal cell phone." (*See* doc. 9 at 20, ¶109 (stating that Diversified Consultants used "an automatic telephone dialing system in placing calls to Plaintiff Rhinehart's cellular telephone.")). The Amended Complaint also alleges that "Diversified Consultants' automatic telephone dialing machine randomly dialed Plaintiff Rhinehart's employer's telephone number on multiple occasions." (Doc. 9 at 11, ¶59). The Plaintiff alleges that these calls continued despite her "multiple" requests to Diversified Consultants to stop. (Doc. 9 at 17, ¶¶97-98).

Attached to the Amended Complaint are two letters. The first[2], dated September 28, 2016, is from Diversified Consultants, Inc. (Doc. 9-2 at 1). It notes the "Current

---

[2] Although this letter is first in time, it is the <u>second</u> letter attached to the Amended Complaint.

Creditor" as "Jefferson Capital Systems, LLC," notes the "Debt Description" as "Verizon Wireless," and states that the "Current Balance" is $1,534.14. (Doc. 9-2 at 1). The body of that letter reads:

> This Notice is to inform you that Jefferson Capital Systems, LLC is the new owner of the above-referenced account. Diversified Consultants, Inc, will service your account on the owner's behalf.
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume the debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.
>
> Calls to or from this company may be monitored or recorded.
>
> Diversified Consultants[,] Inc. Is doing business as Diversified Central[,] Inc. in the state of Alabama.
>
> This is an attempt to collect a debt. Any information will be used for that purpose. This communication is from a debt collector.

(Doc. 9-2 at 1).

The second letter is dated February 10, 2017, and is also from Diversified Consultants, Inc. (Doc. 9-1 at 1). It notes the "Current Creditor" as "Jefferson Capital Systems, LLC," notes the "Debt Description" as "Verizon Wireless," and states that the "Current Balance" is $1,474.14. (Doc. 9-1 at 1). The body of that letter reads:

Our attempts to contact you regarding your past due account have been unsuccessful. Please contact us to discuss this account.

Calls to or from this company may be monitored or recorded.

Diversified Consultants[,] Inc. Is doing business as Diversified Central[,] Inc. in the state of Alabama.

This is an attempt to collect a debt. Any information will be used for that purpose. This communication is from a debt collector.

(Doc. 9-1 at 1).

## III.    ANALYSIS

### A.    The RICO Claims (Counts One and Two)

The Eleventh Circuit has stated:

Under RICO, it is illegal "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Four elements must be proven in a RICO case: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282 (11th Cir.2006) (per curiam) (internal quotation marks omitted). "A pattern is established by at least two acts of racketeering activity the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." *McCaleb v. A.O. Smith Corp.*, 200 F.3d 747, 750 (11th Cir.2000) (alteration and internal quotation marks omitted). The civil RICO provision permits a private plaintiff "injured in his business or property by reason of a violation of section 1962" to recover treble damages. § 1964(c).

*Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013)[3]. The Defendants argue that the Plaintiff has failed to plausibly allege a "pattern of racketeering activity" of an "enterprise."

### 1. *Pattern of Racketeering Activity*

"Racketeering activity" includes certain criminal predicate acts defined by statute, including conduct "relating to mail fraud." 18 U.S.C. §1961(1)(B); 18 U.S.C. §1341. In this case, the Plaintiff alleges that Jefferson Capital sent letters through the U.S. mail which "purposely and willfully misrepresented to Plaintiff Rhinehart that Defendant Jefferson Capital was a creditor to Plaintiff Rhinehart" when it was not. (Doc. 9 at 7, ¶32). She also contends that "Defendant Diversified Consultants [falsely] alleged in these letters that Jefferson Capital was an original creditor of Plaintiff Rhinehart" when it was not. (Doc. 9 at 8, ¶40; see also doc. 9 at 8, ¶41) (emphasis added). According to the Plaintiff, these representations were made in a successful attempt to get the Plaintiff to pay on the alleged debt.

The Supreme Court has stated:

_____

[3] "While a plaintiff need not allege facts on every element of the prima-facie case in the complaint, the elements can be a 'helpful guide' in determining whether a claim is plausible at the motion to dismiss phase." *McCurdy v. Auburn Univ.*, No. 3:14CV226-MHT WO, 2015 WL 2064248, at *4 (M.D. Ala. May 4, 2015) (Thompson, J.) (quoting *Powell v. Harsco Metal*, 2013 WL 3242759, at *5 (N.D.Ala.2013) (Hopkins, J.) (in turn citing *Bowers v. Bd. Of Regents of Univ. Sys. Of Georgia*, 509 Fed. App'x 906, 910 (11th Cir.2013))).

Mail fraud . . . occurs whenever a person, "having devised or intending to devise any scheme or artifice to defraud," uses the mail "for the purpose of executing such scheme or artifice or attempting so to do." § 1341. The gravamen of the offense is the scheme to defraud, and any "mailing that is incident to an essential part of the scheme satisfies the mailing element," *Schmuck v. United States*, 489 U.S. 705, 712, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989) (citation and internal quotation marks omitted), even if the mailing itself "contain[s] no false information," *id.*, at 715, 109 S.Ct. 1443.

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647, 128 S. Ct. 2131, 2138, 170 L. Ed. 2d 1012 (2008). In the instant case, the Plaintiff does not allege a scheme to defraud. The basis for her claim is not that money was not <u>owed</u> to Jefferson Capital, as an assignee of the Verizon debt, but instead that Jefferson Capital should not have been identified in the letters as a "creditor" because, under the FDCPA, "creditor" is defined as

"any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another."

(Doc. 19 at 10) (quoting 15 U.S.C.A. § 1692a). She continues:

[Jefferson Capital] is not now, and was not a creditor to Plaintiff Rhinehart at the time the false, ,misleading correspondence was sent to [her]. As pled in the Amended Complaint . . . the statements in the letters sent by United States mail to [the Plaintiff] constitute fraud.

(Doc. 19 at 11).[4]

The Plaintiff provides no authority for the proposition that this definition, unique to the FDCPA, should apply under these circumstances.[5] Regardless, as noted above, the Plaintiff does not dispute <u>that the money was owed</u>, just the nomenclature used in reference to Jefferson Capital. The letters themselves, examples of which are attached to the Amended Complaint, clearly set out the name of the original creditor, and to whom the debt is now owed. Simply put, there is no scheme to defraud here. Absent the allegation of a scheme to defraud, there is no mail fraud, and therefore no RICO claims.

### 2. *Enterprise*

The civil RICO provision permits a private plaintiff "injured in his business or property by reason of a violation of section 1962" to recover treble damages. 18 U.S.C.

---

[4] The Plaintiff makes these arguments in response to the Defendants' arguments that the civil conspiracy claim should be dismissed. However, this is the only section of her brief where the Plaintiff explains the basis for her belief that the Defendants committed mail fraud. In response to the Defendants' arguments that the RICO claims should be dismissed, the Plaintiff confirms that these same alleged acts of mail fraud are the basis for her RICO claims. (*See* doc. 19 at 13).

[5] These allegations do not even establish a violation of the <u>FDCPA</u>, because the context within which the term "creditor" was used was consistent with its ordinary meaning. *See, Prescott v. Seterus, Inc.*, 635 F. App'x 640, 643–44 (11th Cir. 2015) (alleged violations of the FDCPA should be evaluated from the perspective of the least sophisticated consumer); *Scheuer v. Jefferson Capital Sys., LLC*, 43 F. Supp. 3d 772, 780–82 (E.D. Mich. 2014) (Leitman, J.) ("[T]he 'least sophisticated debtor' would not have been misled by Jefferson's self-identification as Scheuer's "current creditor" because Jefferson's use of that phrase was consistent with its ordinary meaning. The term "creditor" is commonly understood to mean "one to whom a debt is owed.").

§ 1964(c). Section 1962 has four subsections. In his Amended Complaint, the Plaintiff does not specify which subsection of section 1962 the Defendants violated. In *Black Diamond Land Mgmt., LLC v. Twin Pines Coal Co., Inc.*, No. 2:14-CV-02333-RDP, 2016 WL 3617974, at *9 (N.D. Ala. July 6, 2016) (Proctor, J.), *aff'd sub nom. Black Diamond Land Mgmt. LLC v. Twin Pines Coal Inc.*, No. 16-15240, 2017 WL 3635178 (11th Cir. Aug. 24, 2017), Judge Proctor, in the context of a motion to dismiss, persuasively dealt with this same circumstance. He wrote:

> [The Plaintiff's] RICO claim is . . . due to be dismissed because Plaintiff has not specified which provision(s) of 18 U.S.C. § 1962 are at issue. The court discusses each one in turn.

### 1) 18 U.S.C. § 1962(a)

> Section 1962(a) provides in pertinent part that:
>
> [i]t shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

> 18 U.S.C. § 1962(a). While the Eleventh Circuit has not pronounced a rule as to § 1962(a)'s application, it is clear that "the essence of a violation of § 1962(a) is not commission of predicate acts but investment of racketeering income." *Gristede's Foods, Inc. v. Unkechauge Nation*,

10

532 F. Supp. 2d 439, 446 (E.D.N.Y. 2007) (quoting *Ouaknine v. MacFarlane*, 897 F.2d 75, 83 (2d Cir. 1990)); *see also Lockheed Martin Corp. v. Boeing Co.*, 357 F. Supp. 2d 1350, 1369 (M.D. Fla. 2005) ("a majority of courts that have addressed the issue have determined that a claimant under § 1962(a) must plead an injury which stems 'not from the racketeering predicate acts themselves' but from the 'use or investment of...racketeering income' ") (collecting cases). Thus, the use or investment of racketeering income must proximately cause harm to the RICO victim. *See Lockheed Martin*, 357 F. Supp. 2d at 1369; *see also Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926, 929 (5th Cir. 2002) ("any injury must flow from *the use or investment of racketeering income*" (emphasis in original) (quotation omitted)); *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 584 (5th Cir. 1992) (holding that there must be a nexus between the claimed violation and the injury).

Here, Plaintiff does not aver a single fact concerning the investment of alleged racketeering income. . . .And, the well-pleaded fact pattern, however scant it may be, in no way suggests that the use or investment of any income derived from Defendants' purported racketeering activities are what proximately caused harm to Plaintiff. Thus, any claim under § 1962(a) is due to be dismissed.

### 2) 18 U.S.C. § 1962(b)

Section 1962(b) provides that "[i]t shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b). "A violation of § 1962(b) requires that the RICO defendant acquire or maintain an interest in, or control of, an enterprise through (or by way of) the pattern of racketeering activity." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Assn.*, 176 F.3d 315, 328 (6th Cir. 1999) (citing *Compagnie De Reassurance D'Ile France v. New England Reins. Corp.*, 57 F.3d 56, 91–92 (1st Cir. 1995), *cert. denied*, 516 U.S. 1009 (1995); *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1189–90 (3d Cir. 1993);

*Danielsen v. Burnside-Ott Aviation Training Ctr.*, 941 F.2d 1220, 1230–31 (D.C. Cir. 1991)) (emphasis in original); *accord Club Car, Inc. v. Club Car (Quebec) Import, Inc.*, 276 F. Supp. 2d 1276, 1288 (S.D. Ga. 2003) (citation omitted) (same). Stated otherwise, "§ 1962(b) prohibits a person engaging in a pattern of racketeering for the purpose of acquiring or maintaining an interest in an enterprise." *Sadighi v. Daghighfekr*, 36 F. Supp. 2d 279, 291 (D. S.C. 1999). Plaintiff has not pleaded any facts concerning how Defendants maintained or acquired an interest in the alleged enterprise through any of the purported racketeering activities. "Furthermore, [Plaintiff]'s RICO pleadings fail to 'allege a specific nexus between control of any enterprise and the alleged racketeering activity, as required under section 1962(b).' " *Lightning Lube*, 4 F.3d at 1191 (quoting *Banks v. Wolk*[,] 918 F.2d 418, 421 (3d Cir. 1990)) (other citations omitted). Instead, Plaintiff has set forth "formulaic recitations" and conclusory statements that this court rightfully disregards. *Iqbal*, 556 U.S. at 678, 681. Any Section 1962(b) claim is due to be dismissed with prejudice.

### 3) 18 U.S.C. § 1962(c)

Section 1962(c) states that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affair through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To state a claim for relief under section 1962(c), a plaintiff must satisfy four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282 (11th Cir. 2006). Plaintiff does not successfully plead the four elements.

A RICO "enterprise" is defined to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Plaintiff's allegations, at best, suggest that Defendants formed an enterprise that is an association-in-fact. Of course, an association-in-fact enterprise "can exist in the absence of a formally

structured group." *Lockheed Martin*, 357 F. Supp. 2d at 1360 (quoting *United States v. Young*, 906 F.2d 615, 619 (11th Cir. 1990)). However, not all associations-in-fact are RICO enterprises. Instead, "[t]he critical determination in evaluating whether 'an association of individual entities' constitutes 'a RICO enterprise' is whether 'the association of individual entities, however loose or informal, furnished a vehicle for the commission of two or more predicate crimes.' " *Id*. (quoting *United States v. Goldin Indus., Inc.*, 219 F.3d 1271, 1275 (11th Cir. 2000)) ("*Goldin II*") (internal changes omitted). In other words, the entities must be "associated together for the common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Furthermore, an individual entity "must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).

Plaintiff's rudimentary allegation that Defendants formed an enterprise is simply not enough to survive a motion to dismiss. A Defendant " 'must have some part in directing' the affairs of the enterprise." *Williams*, 465 F.3d at 1285 (quoting *Reves*, 507 U.S. at 179). Yet here Plaintiff has not pleaded any plausible facts that permit an inference that any Defendant ran or helped run the alleged scheme. Indeed, nothing in the Second Amended Complaint suggests that any Defendant directed another Defendant or its agents to take and sell Plaintiff's natural resources. And, even if some Defendants worked with others to establish a method of resource extraction (e.g., one Defendant cleared the timber and then a mining company moved in), there are no facts to suggest that this working together furnished a vehicle to commit predicate crimes. Apart from mere legal conclusions, the Second Amended Complaint contains no allegations suggesting that Defendants "knew about and [much less] participated in the alleged enterprise." *McNair v. Macon Cty. Greyhound Park, Inc.*, No. 10-cv-560, 2011 WL 867220, at *8 (M.D. Ala. Mar. 14, 2011). Plaintiff has failed to plead a cause of action pursuant to Section 1962(c), and that claim is due to be dismissed.

### 4) 18 U.S.C. § 1962(d)

Section 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). Because Plaintiff has failed to state a claim for relief under §§ 1962(a), 1962(b), or 1962(c), it cannot, as a matter of law, support a cause of action pursuant to § 1962(d).

But, here there is even more. Even if Plaintiff successfully pleaded a cause of action under §§ 1962(a), 1962(b), or 1962(c), it still has not alleged a claim under § 1962(d). Plaintiff fails to aver any plausible facts demonstrating an illicit agreement between the Defendants to harm Plaintiff. While a "defendant's participation in a conspiracy may be inferred from acts of his which furthered the objectives of the conspiracy," an unlawful agreement, including "knowledge of the essential nature of the plan," still must be pled to demonstrate the plausible existence of a conspiracy. *United States v. Kopituk*, 690 F.2d 1289, 1323 (11th Cir. 1982) (citations and internal quotations omitted); *see also Twombly*, 550 U.S. at 557 ("without some further factual enhancement [an allegation of conspiracy] stops short of the line between possibility and plausibility of entitlement to relief") (internal changes and citations omitted). Conclusory allegations, "accompanied by nothing more than a bare assertion of a conspiracy, do not plausibly suggest a conspiracy." *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1294 (11th Cir. 2010). "[W]ithout that further circumstance pointing to a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory." *Twombly*, 550 U.S. at 557.

Here, Plaintiff has "merely alleged," as part of its RICO claims, that Defendants conducted their relationship in a manner that harmed Plaintiff and deprived it from its accessing or selling natural resources. *Club Car*, 276 F. Supp. 2d at 1284. But Plaintiff's RICO claims fall far short of identifying any agreement made between Defendants to engage in RICO-prohibited behavior. Rather, Plaintiff's pleading have only made conclusory statements and assumptions "couched as [ ] factual allegation[s]." *Iqbal*, 556 U.S. at 678. Plaintiff has simply not alleged facts to show a valid RICO violation. Accordingly, that claim is due to be dismissed.

*Black Diamond*, 2016 WL 3617974, at *11–13 (bold in original).

In the instant case the Plaintiff similarly has failed to state a claim for relief under sections 1962(a), 1962(b), or 1962(c). The Plaintiff fails to allege facts to plausibly establish an "enterprise." Indeed, the word "enterprise" appears nowhere in the Amended Complaint.[6] Since she has not alleged an enterprise, she has not pleaded any facts plausibly demonstrating how the Defendants maintained or acquired an interest in an enterprise through any of the purported racketeering activities. Finally, the Plaintiff does not allege that she was harmed by the investment of alleged racketeering income. As noted in *Black Diamond*, the failure of these claims dooms, as a matter of law, any claim brought pursuant to § 1962(d). The RICO claims in Counts One and Two will be dismissed.

### B.   Violations of the TCPA (Count Three)

Although the Plaintiff does not specify which section of the TCPA she contends was violated, in her brief she sets out 47 U.S.C. § 227(a)(1)(A), which provides:

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States--

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial

---

[6] Furthermore, in her response to the Motion, the Plaintiff fails to argue the existence of an enterprise.

or prerecorded voice–

(i) to any emergency telephone line (including any "911" line and any emergency line of a hospital, medical physician or service office, health care facility, poison control center, or fire protection or law enforcement agency);

(ii) to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States[.]

The Defendants argue that the numbers to which the calls in question were made are not covered by the TCPA. They point out that Count Three, in part, states that calls were made to the Plaintiff's "personal telephone number," not her cell phone. However, as noted above, at paragraph 109, found in Count Five, the Plaintiff clarifies that her "personal telephone number" was in fact her "cellular telephone." Section (a)(1)(A)(iii) clearly covers numbers assigned to a "cellular telephone service."

The calls made to Plaintiff's employer, on the other hand, are not alleged to fall within one of the categories above, and the Plaintiff makes no argument that calls to her employer are covered. "'When an argument is raised upon [a] motion to dismiss that a claim is subject to dismissal, and the non-moving party fails to respond to such an argument, such claims are deemed abandoned and subject to dismissal.'" *Barnes v.*

*AstraZeneca Pharm. LP*, 253 F. Supp. 3d 1168, 1171 (N.D. Ga. 2017) (quoting

*Cornelius v. JPMorgan Chase Bank, N.A.*, No. 1:15-CV-3394-ELR-LTW, 2016 WL

7468811, at *3 (N.D. Ga. July 21, 2016) (Walker, Mag. J.) (*in turn citing*, *e.g., Coal.*

*for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326

(11th Cir. 2000)), *approved and adopted by* 2016 WL 7507521, at *1 (N.D. Ga. Aug.

10, 2016) (Ross, J.)).[7] To the extent that the Plaintiff's TCPA claims are based on calls

to her employer, those claims will be dismissed.

Even though calls to the Plaintiff's cell phone are covered, and despite the fact

that she sets out several dates and times on which calls were made to her, the Plaintiff

has alleged no facts which plausibly establish that such calls were made using an

"automatic telephone dialing system"[8] other than the bare allegations that such a system

was used.[9] This Court finds persuasive the authority cited by the Defendants on this

issue, which holds such bare allegations to be insufficient. *See*, *e.g.*, *Padilla v.*

*Whetstone Partners, LLC*, No. 14-21079-CIV, 2014 WL 3418490, at *2 (S.D. Fla. July

14, 2014) ("Plaintiff also fails to explain the circumstances that suggest Defendant used

---

[7] In any case, the Plaintiff lacks standing to bring a claim for calls to her employer.

[8] As noted above, the Plaintiff uses the phrase "automatic telephone dialing machine," which the Court treats as if the Plaintiff had alleged the use of an "automatic telephone dialing system."

[9] The Plaintiff ignores this issue in her response to the motion, despite the fact that it was raised by the Defendants.

an automatic calling device. For example, Plaintiff could detail whether there was a pause upon his answering the call, the content of the pre-recorded messages (i.e. were they identical messages?), or any other fact that would support his conclusory allegation that he received calls from an automatic telephone dialing system."); *Johansen v. Vivant, Inc.*, No. 12 C 7159, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012) ("Without enhancing his complaint with anything more than the language already available in the statute, Plaintiff provides only a threadbare, "formulaic recitation of the elements" of a TCPA cause of action, which is not entitled to an assumption of truth.") (internal citations omitted).

In *Aikens v. Synchrony Fin. d/b/a Synchrony Bank*, No. 15-10058, 2015 WL 5818911, at *4 (E.D. Mich. July 31, 2015), *report and recommendation adopted sub nom. Aikens v. Fin.*, No. 15-CV-10058, 2015 WL 5818860 (E.D. Mich. Aug. 31, 2015), a case factually similar to the instant case, the court wrote:

> While plaintiffs cannot be expected to provide specific details about the type of dialing systems used to deliver the calls they receive, it is entirely reasonable to demand that plaintiffs provide sufficient information about the timing and content of the calls they receive to give rise to the reasonable belief that an ATDS was used. Plaintiff has not provided sufficient contextual details to determine whether she spoke to a human or merely heard a recording upon picking up the phone. If she spoke to a human, she has not indicated whether she heard a human voice immediately upon picking up her phone, or whether there was a significant period of "dead air," which is generally indicative of the use of an automatic dialer. *See Loveless v. A1 Solar Power, Inc.*, No.

EDCV141779FMODTBX, 2015 WL 4498787, at *3 (C.D.Cal. July 23, 2015). <u>Plaintiff's allegations permit the Court to infer that she received a great number of calls from Defendant's number, but no allegations in the complaint permit an inference that Defendants used an ATDS to accomplish these calls. To surmount this threshold, Plaintiff could plead those facts which are likely within her knowledge, but which she has not included in her complaint: the content of Defendant's calls, whether she spoke to a human, whether there was dead air prior to a human picking up the line, or any other facts which may tend to make the use of an ATDS more likely.</u> Because these facts were not alleged in her complaint, Plaintiff has not stated a plausible claim for relief under the TCPA § 227, and Defendant's motion to dismiss should be granted.

*Aikens*, 2015 WL 5818911, at *4 (emphasis added). Similarly, in the instant case the Plaintiff's allegations allow the Court to infer noting more than that she received several calls. Count Three will be dismissed.

## C.    <u>The FDCPA Claim (Count Five)</u>

The Plaintiff alleges that Diversified Consultants are liable for violating 15 U.S.C. § 1692d, which provides:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.

(4) The advertisement for sale of any debt to coerce payment of the debt.

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C.A. § 1692d.

In Count Three, the Plaintiff alleges that during the phone calls made to her by Diversified Consultants, "Diversified Consultants did not make meaningful attempts to disclose it's [sic] true identity." (Doc. 9 at 20). This parroting of the language of the statute is merely "a formulaic recitation of the elements," which the Supreme court has said "will not do." *Twombly*, 550 U.S. at 555. The Amended Complaint contains no facts which establish whether the Plaintiff (or anyone else) answered any of the calls, to whom she spoke if she did answer, or what was said to her either directly or via a voice mail message. In short, no facts are pleaded which plausibly establish that "Diversified Consultants did not make meaningful attempts to disclose it's [sic] true identity." (Doc. 9 at 20). To the extent that Count Three is based on this allegation, it

will be dismissed.

The Plaintiff also alleges that

Diversified Consultants violated §1692d of the FDCPA when it engaged
in conduct, the natural consequence of which was to harass, annoy,
oppose or abuse Plaintiff Rhinehart by using an automatic telephone
dialing system in placing calls to Plaintiff Rhinehart's cellular telephone
to which Plaintiff Rhinehart had not consented.

(Doc. 9 at 20, ¶109). Note that "[c]ausing a telephone to ring or engaging any person

in telephone conversation repeatedly or continuously with intent to annoy, abuse, or

harass any person at the called number" is a violation of the statute. 115 U.S.C.

§1692d(5). But that is not what the Plaintiff is alleging. She seems, instead, to be

alleging that it is a violation of the statute to "us[e] an automatic telephone dialing

system" to call her without her consent. It is not. First, as noted above, no facts are

pleaded which plausibly establish that an automatic telephone dialing system was used.

Second, the Plaintiff has failed to designate any portion of the FDCPA which prohibits

the use of such systems. Finally, "[i]ntrusive and unwanted phone calls are not

necessarily abusive, deceptive, and unfair debt collection practice" under the FDCPA.

*Lardner v. Diversified Consultants Inc.*, 17 F. Supp. 3d 1215, 1226 (S.D. Fla. 2014)

(Ungaro, J.).

The Plaintiff alleges that 34 separate calls were made to her cell phone between

December 27, 2016, and March 2, 2017–a period of 65 days. That is an average of

about one call every two days. The Plaintiff does not allege that she answered any of these calls, the content of any messages which were left, or that, before any of them were made, she asked that they be discontinued.[10] On these facts, the Court holds that the Plaintiff has not plausibly pled that the calls were made to harass, oppress, or abuse the Plaintiff. *See, Lardner*, 17 F. Supp. 3d at 1225 (simply calling plaintiff 126 times over the course of seven months is not enough to violate the FDCPA where there was no evidence of egregious or harassing conduct). The Plaintiff has provided no authority to the contrary.

### D.    <u>Wantonness (Count Six)</u>

The Plaintiff alleges that all of the Defendants are liable for wantonness. The Alabama Supreme Court has stated:

---

[10] The Plaintiff alleges:

> 97.    Plaintiff Rhinehart has, on multiple occasions requested the Defendant Diversified Consultants stop placing calls to her and her employer using its automatic telephone-dialing machine.

> 98.    Despite these many requests, Defendant Diversified Consultants continues to violate the TCPA in regards to Plaintiff Rhinehart.

(Doc. 9 at 17, ¶¶97-98). Continuing to make calls after being asked not to do so, is <u>not</u> a violation of <u>section 1692d</u>. It might be violation of section 1692c(c), but only if the request was in writing. *See* 15 U.S.C. § 1692c(c). The point is moot since the Plaintiff does not allege that her request was in writing, and does not claim a violation of section 1692c(c). *See*, *Clark v. Pinnacle Credit Servs.*, No. 5:16-CV-221 (MTT), 2017 WL 870403, at *2 (M.D. Ga. Mar. 3, 2017) (Treadwell, J.) (dismissing claim for violation of FDCPA where it was not alleged that plaintiff told defendant to stop calling in writing).

" ' "Wantonness" has been defined by this
Court as the conscious doing of some act or
the omission of some duty, while knowing of
the existing conditions and being conscious
that, from doing or omitting to do an act, injury
will likely or probably result. To prove
wantonness, it is not essential to prove that the
defendant entertained a specific design or
intent to injure the plaintiff.'

"*Alfa Mut. Ins. Co. v. Roush*, 723 So.2d 1250, 1256
(Ala.1998)."

*Ervin v. Excel Props., Inc.*, 831 So.2d 38, 41 (Ala.Civ.App.2001). "To
establish wantonness, the plaintiff must prove that the defendant, with
reckless indifference to the consequences, consciously and intentionally
did some wrongful act or omitted some known duty. To be actionable,
that act or omission must proximately cause the injury of which the
plaintiff complains." *Martin v. Arnold*, 643 So.2d 564, 567 (Ala.1994).

*Galaxy Cable, Inc. v. Davis*, 58 So. 3d 93, 101 (Ala. 2010); *see also*, Ala. Code §

6-11-20(b)(3) (defining wantonness as "[c]onduct which is carried on with a reckless

or conscious disregard of the rights or safety of others").

In the instant case, the Amended Complaint fails to specify what conduct, by

which Defendant, was wanton. Instead, Count Six alleges that the "afore-described

actions" of each Defendant were wanton. The Plaintiff's brief in response to the Motion

merely states:

The Amended Complaint clearly alleges that each of the acts describe[d]
within the Amended Complaint fall within the elements of wantonness
under Alabama law. (Amend. Com. ¶¶ 111-117). The Wantonness count

> clearly incorporates the afore-described acts in the Amended Complaints as those things that give rise to the Wantonness claim.

(Doc. 19 at 13). This type of pleading is an example of a "shotgun pleading." *See, Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015). The wantonness claim can be dismissed on that basis alone. Furthermore, despite the Amended Complaint's incorporation of <u>everything</u> which came before it as a basis for the wantonness claim, the Amended Complaint, as shown above, fails to plausibly allege that any Defendant did anything <u>wrong</u>, much less in a "wanton" manner. Count Six will be dismissed.

### E.   <u>Civil Conspiracy (Count Four)</u>

"A plaintiff alleging a conspiracy must have a valid underlying cause of action." *Callens v. Jefferson Cty. Nursing Home*, 769 So. 2d 273, 280 (Ala. 2000). "Therefore, a conspiracy claim must fail if the underlying act itself would not support an action." *Triple J Cattle, Inc. v. Chambers*, 621 So. 2d 1221, 1225 (Ala. 1993). In response to the Motion, the Plaintiff states:

> Having sufficiently pled the violations of the FDCPA, and TCPA, Plaintiff Rhinehart's claims of civil conspiracy survive summary judgment.
>
> Additionally, the Amended Complaint alleges in detail that DCI sent false and misleading correspondence to Plaintiff Rhinehart on multiple occasions.

(Doc. 19 at 10). As shown above, the FDCPA and TCPA claims fails, and the

Amended Complaint does not plausibly establish that mail fraud occurred. Accordingly, the civil conspiracy claim fails and Count Four will be dismissed.

## IV.    CONCLUSION

Based on the foregoing, the Motion will be **GRANTED**, and this case will be **DISMISSED with prejudice**.

**DONE** and **ORDERED** this 11th day of January, 2018.

**VIRGINIA EMERSON HOPKINS**
United States District Judge